## IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

CHICAGO & VICINITY LABORERS'  )
DISTRICT COUNCIL PENSION FUND,  )
CHICAGO & VICINITY LABORERS'  )
DISTRICT COUNCIL WELFARE FUND,  )
CHICAGO & VICINITY LABORERS'  )
DISTRICT COUNCIL RETIREE HEALTH  )
AND WELFARE FUND, and CATHERINE  )
WENSKUS, not individually but as  )
Administrator of the Funds,  )
   )
   )    **Case No.**   26-cv-7285
            **Plaintiff,**  )
   **and**  )
   )
   )
   )
MAXWELL BATISTE CONSTRUCTION  )
COMPANY, INC., an Illinois corporation,  )
            **Defendant.**  )

## COMPLAINT

NOW COMES Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund and Chicago & Vicinity Laborers' District Council Welfare Fund, Chicago & Vicinity Laborers' District Council Retiree Health and Welfare Fund, and Catherine Wenskus, Administrator of the Funds ("Funds"), by their attorneys, Patrick T. Wallace, Amy N. Carollo, G. Ryan Liska and Sara S. Schumann for their Complaint against Maxwell Batiste Construction Company, Inc. ("Company"):

### FACTS COMMON TO ALL COUNTS

1. Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and (2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Chicago Laborers' Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA.  29 U.S.C. §1002(3) and 37(A).  They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA.  29 U.S.C. § 186(c)(5).  The Funds have offices and conduct business within this District.

4.      Plaintiff Catherine Wenskus is the Administrator of the Laborers' Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Laborers' Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union").  With respect to such matters, Wenskus is a fiduciary of the Laborers' Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant Company is an Illinois corporation that did and does conduct business within this District and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

6.      The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union operates and maintains its office within the District.  The Union and Company are parties to a collective bargaining agreement which carried the term June 1, 2021 to May 31, 2025. ("Agreement").  (A copy of the "short form" Agreement entered into between the Union and Company which Agreement adopts and incorporates Master Agreements between the Union and

2

various employer associations, and also binds Company to the Laborers' Funds respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

7. The Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

8. The Funds' respective Agreements and Declarations of Trust obligate Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed liquidated damages and interest.

9. The Pension, Welfare and Retiree Health and Welfare Declaration of Trust Agreement documents provide Trustees with the powers to formulate, establish and maintain collection procedures for collection of contributions and those actions, procedures and polices shall be binding upon all Contributing Employers.

10. The Funds' Amended and Restated Collection and Audit Policies and Procedures provides that in the event the Funds files suit against a Contributing Employer, any liquidated damages incurred by the Contributing Employer after the lawsuit is filed will be assessed liquidated damages at twenty percent (20%) of the contributions owed. This Collection and Audit Policies was adopted by the respective Trustees for the Pension, Welfare and Retiree Health and Welfare Funds.

11. The CBA and Amended and Restated Collection and Audit Policies and Procedures provide that in the event the Trustees refer an account to legal counsel for collection of delinquent fringe benefit contributions or to compel an audit, the employer shall be liable for reasonable attorneys, audit costs, interest and filing costs incurred in the collection process.

12. The Funds' Collection and Audit Policies provide any delinquent contributions owed by a Contributing Employer shall bear interest in the amount of twelve percent (12%) per annum, compounded from the due date until the obligation is fully satisfied.

13. In addition to fringe benefit reports, the CBA obligates the Company to submit and pay Dues Reports. The Company is required to deduct from the wages of employees covered by said contract working dues in the amount of three and three-quarter percent (3.75%) of gross wages and shall remit monthly to the Union office the sums so deducted.

14. The CBA also requires the Company to pay contributions to the Industry Funds. These contributions are paid as part of the Dues Reports and consist of the Concrete Contractors

4

Association ("CCA"), Chicago-Area Laborers-Employers Cooperation and Educational Trust ("LECET") and the Laborers' District Council Laborer Management Cooperation Committee ("LMCC").

15.     Dues Reports and contributions are due by the 10th day following the month in which the work was performed.  Dues Reports and contributions which are not submitted in a timely fashion are assessed liquidated damages at ten percent (10%) of the union dues report amount.

16.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

17.     The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine fringe benefit and union dues contribution compliance.

### COUNT I

**(Failure To Submit To An Audit To Determine Employee Benefit Contributions Compliance)**

18.     The Funds re-allege and incorporate the allegations contained in paragraphs 1-17 of this Complaint.

19.     In April 2026, the Funds' auditor mailed a written audit demand to the Company covering an audit period of August 12, 2021 through March 31, 2026.  The audit demand was also emailed to the Company.   On May 14, 2026, the Funds' auditor called the Company's phone number it had on file with the Funds; however, an individual answered and advised the auditor he

had the wrong number.    On May 14 and 18, the auditor emailed the Company requesting it schedule the audit.   The Company failed to respond.

20.    The Company's failure to schedule the audit and produce all requested records deprives the respective Funds of information needed to administer to the Funds thereby jeopardizing the benefits of the participants and beneficiaries.

21.    Under the terms of the Agreement and the Funds' Agreements and Declarations of Trust, the Company is liable for the costs of the audit.

22.    The Company's actions in failing to submit to an audit violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA.  29 U.S.C. §185 and constitute a breach of the Agreements and Declarations of Trust.

23.    Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, and the terms of the Agreement and the Funds' respective Trust Agreements, the Company is liable to the Funds for unpaid contributions, as well as interest and liquidated damages, audit costs and reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Funds respectfully request that this Court enter judgment against Defendant Maxwell Batiste Construction Company, Inc.:

a.    ordering Defendant Maxwell Batiste Construction Company, Inc. to contact the Fund counsel G. Ryan Liska, and to schedule an audit and produce all books and records for the period of August 12, 2021 through March 31, 2026;

b.    retaining jurisdiction to enter judgment in a sum certain on amounts revealed as owing in the audit, if any including unpaid contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs;

c.	awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

**(Failure To Submit To An Audit To Determine Union Dues Contribution Compliance)**

24.	The Funds re-allege and incorporate the allegations contained in paragraphs 1-17 of this Complaint.

25.	Notwithstanding the obligations imposed by the Agreement, the Company has failed to submit its books and records for an audit to determine union dues contributions compliance for the period of August 12, 2021 through March 31, 2026, thereby depriving the Union of information.

26.	Pursuant to the Agreement, the Company is liable to the Funds for the unpaid union dues, as well as liquidated damages, accumulative liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiff Funds respectfully request that this Court enter judgment against Defendant Maxwell Batiste Construction Company, Inc.:

a.	ordering Defendant Maxwell Batiste Construction Company, Inc. to contact the Funds' counsel G. Ryan Liska, and to schedule an audit and produce all books and records for the period of August 12, 2021 through March 31, 2026;

b.	retaining jurisdiction to enter judgment in a sum certain on union dues contribution amounts revealed as owing in the audit, if any including unpaid contributions, interest, liquidated damages, audit costs, and attorneys' fees and costs;

c.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT III

### (Breach of Labor Agreement- Failure to Post Bond)

27.     The Funds re-allege and incorporate the allegations contained in paragraphs 1-17 of this Complaint.

28.     Article VI of the Agreement provides all signatory employers shall maintain a surety bond in a form and amount satisfactory to the Union, but not less than $5,000.00 to guarantee the payment of wages, pension and welfare contributions.

29.     Article VI, ¶ 3 further provides "[t]he trustees of the benefit funds, based on established guidelines or a contractor's payment history, shall have the discretion to adopt a policy that increase, reduces or eliminates the bonding requirement of this Article for those contractors the trustees deem appropriate for such increase, reduction or elimination."

30.     The Funds, as a beneficiary of the Agreement, have been authorized by the Union to enforce the bond provision of the Agreement.

31.     The form of the bond required by the Union is either a traditional surety bond back by an insurer or a cash bond.

32.     In accordance with the Agreement and/or the Funds collection procedures and based upon the Company's workforce, the Company is required to post either a paper or cash bond in the amount of $5,000.00.

33.     Under the terms of Agreement, if the Company fails to post the bond it is liable for all attorney fees and costs incurred in seeking to enforce the Agreement's bond provision.

34.     Notwithstanding its obligation to do so the Company failed to post the required $5,000.00 bond.

35.     Failure to post the $5,000.00 bond constitutes a breach of the Agreement, and places the Funds, Union and its members at risk that the obligation owed by the Company will be met in a timely fashion because the security required by the Agreement is not available.

WHEREFORE, Laborers' Funds respectfully request that this Court:

a.     enter judgment against Defendant Maxwell Batiste Construction Company, Inc in the amount of $5,000.00 which shall be used by the Funds as a cash bond or in the alternative, order Defendant Maxwell Batiste Construction Company, Inc to immediately post a $5,000.00 surety bond;

b.     ordering Defendant Maxwell Batiste Construction Company, Inc to reimburse the Funds for all attorney's fees and costs incurred in pursuing this action; and

c.     granting any other relief deemed just and equitable.


June 22, 2026

                                        Respectfully submitted,

                                        By:  /s/ G. Ryan Liska


G. Ryan Liska
Laborers' Pension and Welfare Funds
Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540

9



# CONSTRUCTION & GENERAL LABORERS'
# DISTRICT COUNCIL OF CHICAGO AND VICINITY

AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA

999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-0289 • FAX: 630/655-8053

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **Maxwell Batiste** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America, AFL-CIO ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 68, 75, 76, 152, 225, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. Recognition. In response to the Union's request for recognition as the majority representative of the unit employees, the Employer recognizes the Union as the sole and exclusive collective bargaining representative under Section 9(a) of the NLRA for the employees now and hereinafter employed under this Agreement with respect to wages, hours and other terms and conditions of employment. This recognition is based on the Union having shown, or having offered to show, evidence of its majority support. The Employer has not assigned its bargaining rights to any entity for purposes of multi-employer bargaining, and it hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association for purposes of multi-employer bargaining without prior written approval from the Union. Notwithstanding the number of persons employed under this Agreement, the Employer shall abide by this Agreement and all extensions hereof, and it waives any right or defenses it may have to terminate this agreement or refuse to negotiate a successor agreement based upon the number of persons employed, and it consents to enforcement of this commitment directly through any tribunal or court of competent jurisdiction.

2. Labor Contract. The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union in its sole discretion, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Fall Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley Associated General Contractors, the Great Lakes Contractors Association, the Midwest Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. Total economic increase. The Employer shall pay its employees a total economic increase of $2.17 per hour effective June 1, 2017; $2.24 per hour effective June 1, 2018; $2.31 per hour effective June 1, 2019; and $2.39 per hour effective June 1, 2020, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2017, the minimum wage rate shall be $41.20 per hour.

4. Checkoff Deductions and Remittances. The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in such amounts as the Union shall from time to time establish, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made. If the Employer fails to timely remit any amounts to the Union or its affiliated fringe benefit funds that are required under this Agreement, it shall be obligated to the Union for all costs of collection, including attorney fees.

The Employer shall further deduct an amount designated by the Union for each hour that an employee receives wages under the terms of this Agreement on the basis of individually signed voluntary authorized deduction forms and shall pay over the amount so deducted to the Laborers' Political League ("LPL") or to a designated appointee, not later than the tenth (10th) day of the month next following the month for which such deductions were made. LPL remittances shall include a report of the hours worked by each Laborer for whom deductions are made. Remittances shall be made by a separate check payable to the Laborers' Political League. The Employer shall be paid a processing fee each month from the total amount to be transmitted to the LPL to be calculated at the Illinois Department of Revenue or other applicable standard.

5. Work Jurisdiction. This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. Subcontracting. The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. The Employer shall further assume the obligations of all tiers of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. Fringe Benefits. The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds. The Employer further affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by its duly authorized agents at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, and acknowledging the report form to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. Contract Enforcement. All grievances filed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic action is in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. Successors. In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. Termination. This Agreement shall remain in full force and effect from June 1, 2017 (unless dated differently below) through May 31, 2021, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such timely and proper notice, the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement. Notwithstanding the foregoing, the Union in its sole discretion may terminate this Agreement at any time upon written notice should the Employer fail to comply with its bonding obligations or if the Employer is a joint employer with or alter ego of another entity with an outstanding delinquency to the Union's affiliated fringe benefit funds.

11. Execution. The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept facsimile and electronic signatures on this Agreement as if they were the original signatures.

Dated: **August 12th** , 20 **21** .

ACCEPTED:

Laborers' Local Union No. **01**

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _____
James P. Connolly, Business Manager

By: _____
Charles LoVerde, Secretary-Treasurer

For Office Use Only: _____

**Maxwell Batiste Constr., Company, Inc.**
(Employer)

FEIN No.: _____

By: **Maxwell Batiste**
(Print Name and Title)

_Maxwell Batiste_
(Signature)

**1819 S Michigan Ave., Unit 710**
(Address)

**Chicago, IL 60616**
(City, State and Zip Code)

**773-558-3349**
(Telephone/Telefax)

**Maxwellbcci@gmail.com**
(Email Address)

Effective June 1, 2017     WHITE - LOCAL UNION   •   CANARY - TRUST FUND   •   PINK - DISTRICT COUNCIL   •   GOLD - EMPLOYER

**EXHIBIT**

**A**

tabbies